UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANNY DOULEN, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:08-cv-1217-LJM-TAB |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| the Social Security Administration, | ) | |
|     Defendant. | ) | |

### ENTRY ON JUDICIAL REVIEW

Plaintiff, Danny Doulen ("Doulen"), requests judicial review of the final decision of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration (the "Commissioner"), which found that Doulen was not entitled to a period of disability, and Disability Insurance Benefits ("DIB"). The Court rules as follows.

### I. BACKGROUND

On September 14, 2004, Doulen filed an application for a period of disability and DIB, alleging a disability onset date of January 1, 2000. Doulen alleged that he was unable to work due to shortness of breath, back problems, fatigue, decreased stamina, and leg problems. R. at 209-210. The claim was denied initially on January 6, 2005, and upon reconsideration on March 10, 2005. Doulen received a hearing before an Administrative Law Judge ("ALJ") on November 15, 2007, in Indianapolis, Indiana. R. at 297. The ALJ found that Doulen was not disabled because he could perform a significant number of light- and sedentary-level jobs despite his impairments. R. at 15-24. Doulen seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Doulen was forty-five years of age when he alleged he became disabled and fifty-three years of age when his insured status expired in September 2007. R. at 17, 22. Doulen's past work includes medium-level work as an auto body repairman and a casket repairer. R. at 22. Doulen last worked in June 2004, when he quit his job due to fatigue, weakness, and shortness of breath upon exertion. R. at 187, 300-01.

On June 22, 2005, Doulen reported to Dr. Dorothy C. Boersma ("Dr. Boersma") in a medical evaluation for Medicaid that he felt anxious and depressed, and that his thoughts raced. R. at 83-84. Doulen was five feet, eight inches tall, weighed 234 pounds, had high blood pressure and smoked cigarettes. R. at 302. Doulen reported occasional angry outbursts, though he described himself as a pretty peaceful person. R. at 304-05. Doulen claimed that he had difficulty making decisions and motivating himself to perform tasks, difficulty with concentration and memory, and panic attacks that occurred every two or three months. R. at 305-08. Doulen reported occasional chest pain, numbness in his feet, and occasional muscle spasms in his left hand. R. at 310-11. Dr. Boersma prescribed medication to help him sleep. R. at 303-304.

Doulen cared for his own personal and household needs. R. at 196-97. Notably, Doulen drove himself to appointments and to run errands, performed odd jobs including working on cars and mowing his lawn, and played banjo and guitar for enjoyment. R. at 142, 151, 197. While Doulen claimed to dislike large groups, he enjoyed spending time with friends and relatives watching television, playing cards, and dining. R. at 197.

The record is void of any medical evidence contemporaneous with June 2004, when Doulen stopped working. R. at 300. In November 2004, Doulen complained of shortness of breath to Dr. Yassin-Kassab. R. at 217. Dr. Yassin-Kassab did not identify any cause

for Doulen's claimed ailment, and recommended pulmonary function testing, which Doulen underwent in February 2005. *Id.* The pulmonary test results did not indicate a severe physical impairment. *Id.*

In May 2005, Doulen complained of headaches, shortness of breath, fatigue, and weakness. R. at 89-90. In June 2005, Dr. Boersma described Doulen as exhibiting some confusion. R. at 83-84. Dr. Boersma considered Doulen unable to work at that time, but expected his functional capacity to improve. R. at 95-101.

In December 2005 and April 2006, Doulen showed normal sensation in his feet. R. at 73, 76. In July 2006, Doulen showed limited sensation in his right foot. R. at 70. In April 2006, Doulen reported that he was feeling well. R. at 73. At that time, Doulen denied chest pain, shortness of breath, or weakness. *Id.* In July 2006, and September 2006, Doulen again reported doing well, with clear lungs and no chest pain. R. at 70, 63. In November 2005, Doulen reported some shortness of breath with mild activity. R. at 68.

A stress test conducted in December 2006 was negative for heart disease. R. at 117-18. In February 2007, Doulen complained of shortness of breath with minimal exertion, and occasional chest pain. R. at 115. His lungs were clear, and neurological examination was normal. R. at 115. Also in February 2007, Michelle Garner, a Certified Nurse Practitioner, found that Doulen was unlimited in his ability to sit, but could only be on his feet for three out of eight hours. R. at 129-131.

The ALJ asked the vocational expert, Mr. Michael Blankenship ("Blankenship"), whether jobs existed that Doulen could perform if he were capable of simple repetitive light work that did not involve climbing of ropes, ladders, or scaffolds, more than occasional bending, stooping, kneeling, crouching, or crawling, work at unprotected heights,

dangerous machinery, open flames, or large bodies of water, or operation of motor vehicles. R. at 328. Blankenship testified that such an individual could perform a significant number of jobs, including work as an assembler or packager. R. at 329.

## II. DISABILITY AND STANDARD OF REVIEW

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423. A "disabled" individual is one who is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "disabled" individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines this work as work which exists in significant numbers either in the region where a person lives or in several regions of the country. *Id.* In determining whether a claimant is disabled, the ALJ applies a five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

1. If the claimant is employed in substantial gainful activity, the claimant is not disabled.

2. If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

3. If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

4

>    4.  If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.
>
>    5.  If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

The burden of proof is on the claimant for the first four steps, then it shifts to the Commissioner at the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Social Security Act, specifically 42 U.S.C. §405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become findings of the Commissioner. *See, e.g.*, *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* While a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court reviews ALJ decisions in social security disability cases deferentially, upholding it if evidence is sufficient for a reasonable person to accept as adequate to support the decision. 42 U.S.C.A. § 405(g).

## III. DISCUSSION

### A. THE ALJ'S FINDINGS

The ALJ first noted that Doulen last met the insured status requirements of the Social Security Act on September 30, 2007. R. at 17. The ALJ further observed that Doulen satisfied the first step of the disability analysis, as he had not engaged in substantial gainful activity since his alleged onset date. *Id.* Next, the ALJ found Doulen had severe impairments, namely diabetes mellitus type II; hypertension; obesity; and anxiety and depression. *Id* (citing 20 CFR 404.1520(c)).

At step three, the ALJ found that Doulen did not have an impairment or combination of impairments that are medically equivalent to an impairment specified in the Listing of Impairments. R. at 18. In support of this finding, the ALJ cited Doulen's own reports, treating and non-treating physician opinions, and their psychological evaluations. *Id.* The ALJ also considered objective medical evidence; medical opinion evidence; Doulen's treatment, activities, and symptoms; precipitating and aggravating factors; the types and effectiveness of medication and treatment; and inconsistencies in Doulen's subjective reports over time. R. at 20-22, 20 C.F.R. § 404.1529(c)(3).

Next, the ALJ found that Doulen had the residual functional capacity ("RFC") to perform light work. R. at 19. The ALJ found that Doulen could occasionally lift and carry twenty pounds, and frequently carry ten pounds; sit, stand or walk six hours of an eight hour work day; and push or pull objects weighing twenty pounds or less. *Id.* The ALJ found that Doulen's RFC limited him to safe, simple and repetitive tasks. R. at 20.

At step four, the ALJ found that Doulen was unable to perform past relevant work. R. at 22. In support of this finding, the ALJ relied on Blankenship's testimony that Doulen had past relevant work as an auto body repairman and a casket repairer. According to Blankenship, both of those occupations were classified as skilled and semi-skilled at the medium exertional level. *Id.* Because Doulen was limited to light work activities, the ALJ found Doulen unable to perform past relevant work. *Id.*

At step five, the ALJ found that considering Doulen's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Doulen could have performed. R. at 23. The ALJ relied on Blankenship's testimony that Doulen was capable of performing the requirements of certain light level occupations, including Assembler and Hand Packer. *Id.* Pursuant to SSR 00-4p, the ALJ ensured that the Vocational Expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles. *Id.* The ALJ found Doulen not disabled, as Doulen could perform other work given Doulen's RFC, age, education and experience. *Id*; 20 C.F.R. § 404.1520(a)(4).

### B.  DOULEN'S ARGUMENTS ON APPEAL

#### 1.  Listing of Impairments

Doulen disputes the ALJ's determination that Doulen's combined impairments did not meet or medically equal listings 12.04 or 12.06 (anxiety and depression). First, Doulen argues that he was denied due process of law because "the ALJ, acting without a medical advisor arbitrarily rejected all of the evidence proving disability and simply rubber-stamped

the erroneous opinions of the agency's non-treating psychologists and physicians."  Pl.'s Br. at 18.  However, the claimant bears the burden of proving that his condition meets or equals a listed impairment.  *Maggard v. Apfel,* 167 F.3d 376, 380 (7th Cir. 1999).  The Court finds Doulen's argument unpersuasive because he fails to cite any evidence to support his generalized claims that his impairments met or medically equaled the listings for anxiety and depression.

Next, Doulen argues that the ALJ committed reversible error by rejecting Doulen's request that the ALJ convene a supplemental hearing to take testimony from a medical advisor (psychologist) to determine whether Doulen's mental impairments equaled listings 12.04 or 12.06.  In support of this argument, Doulen cites *Green v. Apfel*, 204 F.3d 780 (7th Cir. 2000), where the Court held that the ALJ should "summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled."  *Id* at 781.  Doulen's reliance on *Green* is misplaced.  In *Green,* the Court found that the ALJ's analysis of the evidence "did not provide a rational basis for the denial of benefits."  *Id.*  Moreover, the ALJ in *Green* "failed to build a bridge from the evidence to his conclusion."  Conversely, the ALJ in the instant matter made his findings based on substantial evidence in the record showing that Doulen's mental impairments, "considered singly and in combination," did not meet or medically equal the criteria of listings 12.04 or 12.06.  R. at 19.  The ALJ weighed evidence from both sides, including psychological evaluations and Doulen's own reports, in finding against Doulen.  *Id.*  The ALJ properly addressed Doulen's claim within the context of Listings 12.04 and 12.06, and clearly articulated his basis for finding that Doulen's impairments did not meet or medically equal the requirements set forth in the listings.  If the ALJ found it necessary to hear

supplemental medical opinion, he was entitled to do so. However, the ALJ was not required to summon a supplementary medical opinion, as substantial evidence was before him to make a well informed decision within the context of Listings 12.04 and 12.06. *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000).

Next, Doulen argues that the ALJ erred in his analysis of the medical evidence of record. Specifically, Doulen contends that the ALJ erred by rejecting evidence from treating sources and adopting the opinions of non-treating medical sources. The ALJ is not bound to adopt the opinion of the treating physicians. Rather, where medical opinions are inconsistent with other evidence, the ALJ must weigh all of the evidence in determining whether the claimant is disabled. 20 C.F.R. § 404.1527. "Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is 'not inconsistent' with the other substantial evidence in the case record." SSR 96-2p. Here, the ALJ expressly addressed the treating physician's opinions and set forth the reasoning behind the weight he accorded those opinions. R. at 20. The opinions were inconsistent with the objective medical evidence and Doulen's own reports. *Id.* Clinical findings revealed no impairments limiting the claimant's ability to sit stand or walk. Moreover, Doulen's own reports of working on his car and lifting heavy tools are strong evidence regarding his physical capacity during the relevant period. R. at 75, 132.

In summary, the Court concludes that the ALJ's decision that Doulen's impairment did not meet or medically exceed any of the impairment in the Listing of Impairments is supported by substantial evidence.

### 2. The ALJ's Credibility Finding

Doulen also argues that the ALJ's findings regarding Doulen's credibility are not supported by substantial evidence. Specifically, Doulen argues that the ALJ's credibility determination was in violation of Social Security Ruling 96-7 and 20 C.F.R. §§ 404.1529, 416.929, because the ALJ ignored, selectively considered or rejected all of the evidence proving disability and corroborating Doulen's credibility. Doulen claims the ALJ's credibility determination is "patently erroneous" and in violation of SSR 96-7p.

The claimant bears the "burden of supplying adequate records and evidence" regarding an impairment, its severity and the relevant time frame. *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). Doulen fails to describe to the Court exactly what "evidence proving disability and corroborating Doulen's credibility" was ignored by the ALJ. Doulen broadly asserts that the ALJ violated 96-7p, but provides no basis for his blanket assertions. The ALJ expressly considered Doulen's subjective reports of memory problems and increased confusion regarding restrictions to simple and repetitive tasks. R. at 22. The ALJ also expressly addressed Doulen's reports of dyspnea and the additional nonexertional limitations in making findings regarding Doulen's RFC. *Id.* The ALJ's credibility determination was supported by substantial evidence, including the objective medical evidence, medical opinion evidence, Doulen's treatment, Doulen's activities, Doulen's symptoms, precipitating and aggravating factors, the types and effectiveness of medication and treatment, and inconsistencies in Doulen's subjective reports over time. R. at 20-22, 20 C.F.R. § 404.1529(c)(3).

### 3. The ALJ's RFC Assessment

Finally, Doulen argues that the ALJ's residual functional capacity assessment is incomplete because it ignores the impairments resulting from Doulen's mental and pain-numbness problems and fails to provide a description of how all of the medical-psychological-vocational evidence supported the ALJ's finding. Doulen's argument that the ALJ ignored Doulen's mental and pain-numbness problems lacks merit. Doulen fails to cite any of the evidence that he contends was ignored in the ALJ's residual functional capacity assessment. The ALJ considered all Doulen's symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p. R. at 20. The ALJ's RFC assessment also included consideration of opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 06-5p, 06-6p and 06-3p. The ALJ expressly considered Doulen's mental and pain-numbness problems, restricting Doulen to light work activities in view of his subjective reports of dyspnea, weakness, and fatigue. R. at 20. Moreover, the ALJ considered Doulen's "subjective complaints of bilateral foot numbness with the additional nonexertional limitations." *Id.*

Therefore, the Court concludes that the ALJ's decision denying Doulen DIB is supported by substantial evidence.

## IV. **CONCLUSION**

For the foregoing reasons, the final decision of the Commissioner of Social Security in this case is **AFFIRMED**.  Final judgment shall be entered accordingly.

IT IS SO ORDERED this 9th day of December, 2009.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Patrick H. Mulvany
Attorney for Danny Doulen
Willowbrook Parkway, Suite 201
Indianapolis, IN 46205
(317) 253-8659

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov